**Arnold PANELLA, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 28, Docket 23093.**

United States Court of Appeals
Second Circuit.

Argued Oct. 15, 1954.
Decided Nov. 9, 1954.

George Ammerman, New York City (Sidney Schulman, New York City, of counsel), for plaintiff-appellant.

J. Edward Lumbard, U. S. Atty., New York City (Robert K. Ruskin, Asst. U. S. Atty., New Rochelle, of counsel), for defendant-appellee.

Before CHASE, MEDINA, and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

Arnold Panella was convicted under a Kentucky statute [1] in a Kentucky State Court as a habitual drug addict. He was sentenced to 12 months in jail, but placed on probation upon his election to undergo treatment for his addiction at the

1. Ky.Rev.Stats. 218.250.

2. In the Court below the Government also contended that the action was not maintainable under the Tort Claims Act by analogy to Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, in that the plaintiff was confined in this institution without freedom of choice, and,

Public Health Service Hospital in Lexington, Ky., maintained and controlled by the United States through the Army Surgeon General. While an inmate at that institution he was allegedly assaulted by another inmate. He has sued the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2674, and 2680, to recover damages for his injuries, claiming that the assault was caused by the negligence of employees of the United States in failing to provide adequate guards and otherwise properly supervise those confined in the institution.

So far as material to the issue before us, the Tort Claims Act provides (§ 1346 (b) ) that "the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for * * * personal injury * * * caused by the negligent or wrongful act or omission *of any employee of the Government* while acting within the scope of his office or employment * * * (Italics supplied), but (§ 2680(h)) that § 1346(b) shall not apply to "Any claim *arising out of assault, battery,* false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." (Italics supplied.)

The District Court upon the Government's motion for summary judgment dismissed the complaint, 117 F.Supp. 119, on the ground that the action involved a "claim arising out of assault" and was therefore barred under § 2680 (h) of the Tort Claims Act, which the Court considered embraced assaults by persons not employed by the Government as well as those committed by government employees.[2]

further, because such an action as this would not lie against a hospital under Kentucky law. See 28 U.S.C.A. §§ 1346 and 2674. The District Court considered that both contentions involved questions of fact which could not be resolved on a motion for summary judgment, so that neither of these points is before us on this appeal.

■ Traditionally, of course, the Government may not be sued without its consent, and the present Tort Claims Act represents "the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit". See Feres v. United States, 340 U.S. 135, at page 139, 71 S.Ct. 153, at page 156, 95 L.Ed. 152. In construing the language of the Act, we should, on the one hand, give full scope to the Government's relinquishment of its historic immunity from suit, and on the other hand, avoid narrowing the provisions which set forth situations in which Congress has seen fit to retain that immunity. Our object should be to read the Act so as to make it "consistent and equitable", Feres, 340 U.S. at page 139, 71 S.Ct. at page 156, in which we should be untrammeled by any rule of "strict" or "liberal" construction.[3]

■ It is true that Section 2680(h), retaining immunity against claims arising out of assault and battery, can literally be read to apply to assaults committed by persons other than government employees. But we think such a construction out of keeping with the rest of the act. For in the present case the only basis of liability against the Government is the negligence of its employees, not their deliberate torts, since the assailant was not a Government employee. Unless it can be shown that government employees were negligent in maintaining the internal security of the Hospital, no liability could be imposed under the Tort Claims Act for the alleged assault, even if § 2680(h) did not

exist, and the Government had thus waived immunity for claims arising out of assault. It is therefore important to distinguish cases in which it was sought to hold the Government liable on a negligence theory for assaults committed by *government employees.* See Moos v. United States, D.C.Minn.1954, 118 F. Supp. 275; cf. Jones v. United States, 2 Cir., 1953, 207 F.2d 563; certiorari denied 347 U.S. 921, 74 S.Ct. 518. In this case, however, a negligence action is not merely an alternative form of remedy to an action for assault but negligence is rather the essence of the plaintiff's claim.

To illustrate: in one case a person is assaulted by a government employee who becomes angered by a discussion about a matter within his jurisdiction; in another, a visitor to a government prison is assaulted by a prisoner as a result of the prison guards being improperly off duty. Since in the absence of § 2680 (h) the assault in the first case might give rise to an action against the Government without any showing of negligence, it is not difficult to imply that the § 2680 (h) exception was intended to exonerate the Government from all liability of this nature, no matter what the form of the action. But that implication is not so easily reached in the second case where the assault, absent negligence, would not give rise to any liability on the part of the Government. Indeed, the assault and battery exception would seem to be the only type of conduct among those contained in § 2680(h) where the question we have here would arise, for it is hard

---

3. Moore v. United States, 1919, 249 U.S. 487, 39 S.Ct. 322, 323, 63 L.Ed. 721, construing a statute waiving immunity from patent infringement suits, stated in dictum: "The act of Congress must be read 'according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation.'" In the absence of Congressional direction on whether the statute should be strictly or· liberally construed, this appears to us the soundest rule, especially since statements that waivers of immunity are to be·strictly

construed—see United States v. Sherwood, 1941, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Michel, 1931, 282 U.S. 656, 659, 660, 51 S.Ct. 284, 75 L.Ed. 598—are offset by statements that in line with the current disfavor of the doctrine of sovereign immunity, at least some such waivers are to be liberally construed—see United States v. Shaw, 1940, 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888; Federal Housing Administration v. Burr, 1940, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724.

to conceive of a situation involving any of the other acts specified in that Section in which the Government would be liable if the act were committed by someone other than a government employee. Hence, to accept the Government's position on this appeal would in effect require us to read the assault and battery exception as having a wider impact than any of the other exceptions in § 2680(h) —*i. e.*, that it embraces actions whose entire legal foundation rests *solely* on the failure of the Government to perform its duties. We think that the provision cannot properly be so expanded.

The District Court thought that to read the exception in question as limited to assaults committed by government employees was unacceptable for three reasons. The first was that to read it as we do would make the exception redundant, in that only the "negligent" acts of government employees are embraced in § 1346(b), and that since an assault in an "intentional" rather than a "negligent" act, the Government's immunity from suits for assaults by government employees is already preserved by § 1346 (b). But that section also covers "wrongful" acts of government employees, and we cannot read that term, as the lower Court did, merely as referring to "negligently" wrongful acts. The second reason was that it should not be supposed that the Government would wish to protect itself against suits for assaults by its own employees, over whom it has supervision and control, but not against suits for the assaults of non-government employees, where such supervision and control does not exist. But does this follow? A number of considerations may be suggested why it does not. For example, it may be that the § 2680(h) exceptions were prompted by the thought that high standards of public service would be promoted by government employees knowing that they could not engage in such lawless activities at government expense. Or it

might be that these exceptions were considered as involving activities which practically, even though not legally, speaking are outside the scope of a government employee's proper official functions, or in any event unusually difficult for the Government to defend against. Or perhaps it could be said that attention was never focused on the possible application of some of the language in § 2680(h) to the acts of non-government employees. The third reason was that the language "claim arising out of" is broad enough to cover assaults by non-government employees. We have already dealt with this above.

We are also told by the Government that since § 2680(e) excepts any claim arising out of any act or omission of "any employee of the Government"[4] in administering certain provisions of the Trading with the Enemy Act, 50 U.S.C.A. Appendix, §§ 1–31, whereas § 2680(h) is not in terms limited to government employees, this shows that § 2680(h) was intended to embrace the acts of non-government employees as well. It would seem plain, however, that the occasion for including "any employee of the Government" in § 2680(e) was to identify and limit the particular employees of the Government included in this exception— *i. e.*, those having duties in the administration of certain provisions of the Trading with the Enemy Act, whereas there was no occasion for limiting the application of § 2680(h) to any particular class of employees.

Such meagre legislative history as there is relating to the assault and battery exception seems to support the view we have taken as to its scope. An exception for claims arising out of assault and battery was included in the immunity-waiving bills considered by the 76th and 77th Congresses. In the hearings before the Senate Committee in the 76th Congress, the representative of the Department of Justice referred to the

---

**4.** "The provisions of this chapter and section 1346(b) of this title shall not apply to * * * (e) Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1–31 of Title 50, Appendix". 28 U.S.C.A. § 2680 (e).

assault and battery exception as follows: "Clause 9 proposes to exclude from the cognizance of the law claims arising out of assault, battery, false imprisonment, false arrest, and so forth, a type [*sic*] of torts which would be difficult to make a defense against, and which are easily exaggerated. For that reason it seemed to those who framed this bill that it would be safe to exclude those types of torts, and those should be settled on the basis of private acts". See Hearings on S. 2690, 76th Cong., 3d Sess., p. 39. It may be significant that the Department's representative made no attempt to amplify on the assumption, contained in a letter to the Committee from a regional Federal Bar Association, that the "assault and battery" exception related to acts of government employees. See Hearings on S. 2690, 76th Cong., 3d Sess., pp. 14–15. In the 77th Congress, the Justice Department spokesman for the bill submitted a memorandum, containing the following: "The other exceptions in section 402 relate to *certain Governmental activities* which should be free from the restraint of damage suits, or for which adequate remedies are already available. The exemptions include claims arising out of the loss or miscarriage of postal matter, the assessment or collection of taxes or duties, military or naval activity during wartime, the detention of goods by customs officers, *deliberate torts such as assault and battery*, and some others. The exempted claims for which due provision has already been made by law are admiralty and maritime torts, claims made under the Federal Employees' Compensation Act, and the like." (Italics supplied.) See Hearings on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., p. 28. And during the course of the Hearing he was questioned as follows: "Mr. Robsion: On that point of deliberate assault that is where *some agent* of the Government gets in a fight with some fellow? Mr. Shea: Yes. Mr. Robsion: And socks him? Mr. Shea: That is right." (Italics supplied.) See Hearings on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., p. 33.

The 79th Congress, which finally passed the bill, held no hearings on it. But the committee reports recommending passage also carried over the language of the Department of Justice memorandum, just referred to. See H.R. Rep. 1287, 79th Cong., 1st Sess., p. 6; S.Rep. 1400, 79th Cong., 2d Sess., p. 33.

For the reasons given, we conclude that the District Court erred in dismissing the complaint. We express no opinion as to whether the plaintiff's cause of action may be shown on the trial to be nonetheless barred under other provisions of the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., still less as to the merits of his case.

Judgment reversed.