John DOE 1 and Jane Doe 1, Individually and as Parents and Natural Guardians of Ann Doe 1, John Doe 2 and Jane Doe 2, Individually and as Parents and Natural Guardians of Ann Doe 2, John Doe 3 and Jane Doe 3, Individually and as Parents and Natural Guardians of Alan Doe 1, John Doe 4 and Jane Doe 4, Individually and as Parents and Natural Guardians of Alan Doe 2, John Doe 5 and Jane Doe 5, Individually and Natural Guardians of Alan Doe 3, John Doe 6 and Jane Doe 6, Individually and as Natural Guardians of Alan Doe 4, John Doe 7 and Jane Doe 7, Individually and as Natural Guardians of Ann Doe 3, Ann Doe 4, Ann Doe 5, and Alan Doe 5, and Jane Doe 8, Individually and as Mother and Natural Guardian of Ann Doe 6, Plaintiffs,

v.

Lt. General Willard R. SCOTT, Jr., Superintendent, United States Military Academy, West Point, Honorable John O. Marsh, Jr., Secretary of the Army, the United States of America, A, B, C, D, E, F, G, H, I, J, and K, Present and Former Employees of the West Point Child Development Center and "X" 1, "X" 2, "X" 3, "X" 4, "Y" 1, "Y" 2, "Y" 3, and "Y" 4, and "Z" 1, "Z" 2, "Z" 3, and "Z" 4, Students, Former Students, Employees, or Former Employees, and/or Invitees and Permitees of the O'Neil High School of the Highland Falls, Fort Montgomery General School District, Whose Identities are not Presently Known, and M1 and M2, Defendants.

No. 86 Civ. 1288 (WK).

United States District Court,
S.D. New York.

Jan. 28, 1987.

William E. Crain, Drake, Sommers, Loeb & Tarshis, P.C., Newburgh, N.Y., for plaintiffs.

Rudolph W. Giuliani, U.S. Atty. for S. Dist. N.Y. by Robert W. Gaffey, Asst. U.S. Atty., for defendants.

WHITMAN KNAPP, District Judge.

Parents seek to recover for injuries sustained by their children while the infants were under the care and custody of the West Point Child Development Center ("Center"), a day care center operated by the United States Military Academy at West Point, New York. Plaintiffs allege that the infants were physically abused and sexually molested by Center employees as well as by strangers due to the defendants' negligent operation of the Center.

The defendants can be roughly divided into two groups: those who allegedly molested the infants, and those who were responsible for the proper administration of the Center, either as supervisory employees of the Center or as high Government officials. We are concerned here only with the second group. Three defendants from this group—the United States of America, Willard R. Scott, Jr. (Superintendent of the Military Academy at West Point) and Honorable John O. Marsh, Jr. (Secretary of the Army)—move to dismiss the complaint on the ground that the provision of the Federal Tort Claims Act which excludes claims "arising out of" assault or battery, 28 U.S.C. § 2680(h) ("the intentional torts exception") bars this action against them.

The question presented is whether the intentional torts exception applies to this situation, where the Government assumed a duty to protect the victims from harm by virtue of the infants' enrollment in a Government-run day care program, and where the Government's failure to discharge that duty resulted in harm to the plaintiffs. For the reasons which follow, we believe that this exception does not apply to the facts of this case and deny the motion.

## FACTS

Plaintiff parents entrusted their infants, aged one to three years old, to the care and custody of the Center. The parents received bills from the Center, and paid for their young children to be cared for while in the exclusive control and custody of the Center. In return for payment of these fees, the Center represented to each parent that his or her child would be cared for in a reasonable and safe manner, and that the services provided to them would comply with all United States Army Rules and Regulations.

The Center specifically informed the parents that their children would under no circumstances be taken from the day care center facility, or allowed to leave the Center facility for any reason whatsoever without out the parents' knowledge. Army regulations further provided that parents would be notified of excursions off the premises. The Army rules also required that all areas where children could be taken be open to view, and that all doors in the child play areas be non-locking.

Plaintiffs allege that defendants violated these commitments and procedures, and were otherwise negligent in discharging their duty to protect and safeguard the infants while they were entrusted to the Center's exclusive control and care. As a result of the Government's negligence, the children were taken into a closet which could be locked from the inside, where Center employees abused and sexually fondled them. As an additional result of the Government's negligence, the children were permitted to be transported from the Center to various locations in Orange County, New York, where a nongovernment employee bound and gagged the infants, inserted foreign objects into their anuses and vaginas, and pornographically photographed them. At no time did any of the parents grant permission to the Center to take, or allow their children to be taken, off the Center premises to any of the locations where the children allegedly were molested. Indeed, the parents believed that their children were at all times being cared for and supervised on the premises of the Center.

Prior to the time injuries were inflicted upon the infant plaintiffs, several complaints regarding improper treatment of children at the day care center had been filed with the Center itself and with the Inspector General at West Point. The plaintiffs and other parents had also complained to Center employees and supervisors about strange marks, bites, blisters apparently caused by burns, and genital and anal rashes, but had been told that all was "normal." The Government took no action to investigate either the allegations of child abuse at the Center or the removal of the children from the day care facility.

## DISCUSSION

The Federal Tort Claims Act waives the Government's sovereign immunity for claims of property damage or personal injury caused by the "negligent or wrongful act or omission" of Government employees. 28 U.S.C. § 1346(b). However, that waiver does not apply to any claim "arising out of assault [or] battery." 28 U.S.C. § 2680(h). "Since the United States has not consented to be sued for these torts, federal courts are without jurisdiction to entertain a suit based on them." *Lambertson v. United States* (2d Cir.1976) 528 F.2d 441, 443, *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976).

In *United States v. Shearer* (1985) 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38, the Supreme Court's most recent attempt to address the "arising out of" language, four Justices read the intentional torts exception "to cover claims ... that sound in negligence but stem from a battery committed by a Government employee." *Id.* 473 U.S. at 55, 105 S.Ct. at 3042. *Shearer* was a suit by the survivor of a serviceman (Private Shearer) who was murdered by another serviceman (Private Heard). The survivor alleged that although the Army knew Private Heard was dangerous, it "negligently and carelessly failed to exert a reasonably sufficient control over him" and "failed to warn other persons that he was at large." *Id.* 473 U.S. at ——, 105 S.Ct. at 3041. Chief Justice Rehnquist, writing for

the plurality, reasoned that the battery was the immediate cause of Private Shearer's death; thus, the claim was barred under the intentional torts exception.

Our circuit has adopted the view of the *Shearer* plurality. In *Johnson v. United States* (2d Cir.1986) 788 F.2d 845, the Second Circuit affirmed dismissal of a complaint alleging negligent supervision of a letter carrier employed by the United States Postal Service who sexually molested the child plaintiff. In so doing, the Court observed:

We agree with the Chief Justice that the plain language of § 2680(h) prohibits claimants from clothing assault and battery actions in the garb of negligence by claiming negligent failure to prevent the attack ... The statute's plain language, "arising out of," reflects an intent by Congress to bar a suit against the government for injuries *caused by* a government employee's commission of an assault and battery. It is equally clear that the claim here is for injuries caused by the employee's assault and battery and that, absent the assault and battery, no claim could exist.

*Id.* at 850–51. *Accord, Miele v. United States* (2d Cir.1986) 800 F.2d 50 (affirming dismissal of claim that Army negligently failed to supervise and to appreciate the paranoid schizophrenic mental state of a soldier who threw sulfuric acid into the face of a four-year-old boy.)

■ We conclude that *Shearer, Johnson* and *Miele* are not dispositive of the issue before us. In each of those cases the relationship between the victim and the Government arose only at the point of the alleged assault, and solely because a Government employee committed the assault. There was no independent duty owed by the government to the victim. Here, by contrast, the Government assumed a duty to safeguard the infant plaintiffs long before the events giving rise to this action. Hence, Government liability arises out of the relationship between the Government and the infant victims, not

from any relationship between the government and the attacker.[1]

In a footnote to its opinion, the *Johnson* court was careful to distinguish situations which differed in significant respects from the *Johnson* facts. *Id.* at 853, n. 8. We find that the instant case presents precisely the circumstances referred to in the *Johnson* footnote.

Two of the cases cited with apparent approval in the *Johnson* footnote are particularly relevant here. In *Loritts v. United States* (D.Mass. 1980) 489 F.Supp. 1030, plaintiff was invited to West Point as a member of the Smith College choral group. While walking unescorted through the West Point campus en route to assigned sleeping quarters, plaintiff was assaulted and raped by an academy cadet. The court found the intentional torts exception inapplicable because West Point, having undertaken the task of providing escorts to the choral group, was held to performance with due care. Thus, the substance of the claim was the government's negligent failure to provide proper security, rather than the employee's assault. The *Loritts* court further reasoned that since a negligence action would unquestionably lie had plaintiff been attacked by a civilian or fallen into an unmarked excavation, the Government should not escape liability because of the fortuitous nature of the circumstances following its negligence. The same principles apply here. At oral argument, the Government conceded that the United States, by operating the Center, undertook a duty to protect the children in its care such that it could be held liable if, for example, a Center employee negligently permitted a child to run into the street and the child was hit by a car. Liability should attach regardless of whether the Government's negligence happens to result in sexual molestation by a Government employee or in some other harm.

In *Delong v. United States* (D.Alaska 1984) 600 F.Supp. 331, also cited with apparent approval in *Johnson,* plaintiff civilian employees were assaulted by Marine guards who had not been informed that plaintiffs had permission to be at their job site within a restricted area. The district court permitted the suit, stating,

> Plaintiffs do not merely allege a general failure on the part of government officials to supervise the marine guards. Instead, the claim is that higher government officials failed in their specific responsibility to notify the guards that civilian workers would be in the restricted area. This allegation of specific acts or omissions by higher officials is quite separate from allegations of assault committed by the marine guards.

*Id.* at 338. Likewise, in the case at bar it is alleged that the Center supervisors violated several specific Army regulations, thereby increasing the risk of injury to the infant plaintiffs. The conduct of the supervisors is wholly distinct from the allegations of abuse perpetrated by government employees and others.

Our conclusion that the intentional torts exception does not insulate the Government from liability when the Government's own negligence is a proximate cause of the injury sued upon also finds suport in to the holding of *Bennett v. United States* (9th Cir.1986) 803 F.2d 1502 (intentional tort exception did not insulate federal government from liability for teacher's sexual assault of students, in light of evidence that government was negligent in hiring and continuing to employ teacher.)

■ We are aware that the Fourth Circuit recently rejected, by a split panel, the argument that an action based on an independent affirmative duty owed by the United States is not one "arising out of assault [or] battery." *Thigpen v. United States*

---

1. The Government has called to our attention Judge Kram's recent decision in *Josephs v. United States,* 85 Civ. 7720 (SWK), *slip op.* (S.D.N.Y. January 21, 1987). [Available on WESTLAW, DCTU database]. However, that case is wholly inapplicable. There was no allegation that the Government had made any contract specifically obligating it to protect the plaintiff from harm. Here, as we have observed, the Government specifically undertook to protect from harm the children whose custody it accepted from their parents.

(4th Cir.1986) 800 F.2d 393. However, we are persuaded by the separate opinion of Justice Murnaghan in *Thigpen*, and do not share the majority's fear that such an affirmative duty would turn out to be infinitely elastic. Moreover, whatever difficulties may exist in delineating the precise boundaries of the Government's affirmative duty need not be addressed in the present case, as the Government specifically admits that it owed a duty to the infant plaintiffs.[2]

■ The Government's motion to dismiss the complaint is accordingly denied. However, we believe that this order is appropriate for interlocutory appeal and so certify pursuant to 28 U.S.C. § 1292(b). The only question here presented is whether § 2680(h) bars claims involving an assault or battery, but based on the United States' breach of an affirmative duty to protect the victim. Since the only circuit to have specifically considered plaintiffs' position on this question has—albeit by a split panel—rejected it, *Thigpen, supra,* there obviously exists a "substantial ground for difference of opinion." In addition, we believe that immediate appeal from the order will materially advance the ultimate termination of the litigation. Although Government attorneys might well be reluctant to authorize the expenditure of public funds in the face of well founded doubt as to the legal basis of plaintiffs' claims, we are satisfied that the case would be quickly settled should such doubt be authoritatively removed. On the other hand, it would be unconscionable to subject these infant plaintiffs to the trauma of litigation should it turn out they had no valid claim.

2. We also agree with Judge Murnaghan that it is fruitless to draw distinctions in liability based on whether the assailant was a government employee or not. As Judge Murnaghan notes, "the words 'arising out of assault [and] battery' in § 2680(h) must mean the same thing whether the assailant is a government employee or not. If any claim related to a factual situation involving assault and battery, regardless of its legal theory, may be said to 'arise out of' the assault and battery, the claim must be barred by § 2680(h) regardless of whether the assailant

Discovery is hereby stayed pending resolution of any appeal from this order.

SO ORDERED.

was or was not on the United States payroll. Conversely, if a claim "arises out of" an assault and battery only where it is based on the assailant's tort and not on the government's breach of an independent affirmative duty, then § 2680 poses no obstacle to an affirmative-duty claim, distinct from the assault and battery tort itself, regardless of the employment status of the assailant." *Id.* at 401, n. 14.

Therefore, our reasoning applies equally to the injuries inflicted by all defendants.